IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SANBORN                     :                    CIVIL ACTION
                                    :
          v.                        :
                                    :
CAROLYN W. COLVIN,                  :
Acting Commissioner of Social Security   :
Administration[1]                   :                    NO.  13-224

### REPORT AND RECOMMENDATION

THOMAS J. RUETER
United States Magistrate Judge                          April 16, 2014


      Plaintiff, Michael Sanborn, filed this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB")

under Title II of the Social Security Act ("Act").

      Plaintiff filed a Brief and Statement of Issues in Support of Request for Review

("Pl.'s Br."), defendant filed a Response to Request for Review by Plaintiff ("Def.'s Br."), and

plaintiff filed a reply thereto ("Reply").  For the reasons set forth below, this court recommends

that plaintiff's Request for Review be **DENIED**.

## I.     FACTUAL AND PROCEDURAL HISTORY

      Plaintiff filed an application for DIB alleging disability beginning January 3,

2007.  (R. 132.)  The claim was denied initially and a request for a hearing was filed timely.  (R.

62-63, 77-78.)  A hearing was held on September 17, 2009 before Administrative Law Judge

("ALJ") Linda M. Bernstein.  (R. 37-61.)  Plaintiff, who was represented by counsel, appeared

---

[1]      On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of
the Social Security Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure, Carolyn W. Colvin should be substituted as the defendant in this case.

and testified.  Agnes Gallen, a vocational expert ("VE"), also appeared and testified.  (R. 57-60.)
In a decision dated September 30, 2009, the ALJ found that plaintiff was not disabled under the
Act.  (R. 23-36.)  The ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security
      Act through December 31, 2012.

2.    The claimant has not engaged in substantial gainful activity since January
      3, 2007, the alleged onset date (20 CFR 404.1571 et seq.).

3.    The claimant has the following severe impairments: cervical radiculopathy
      and bilateral carpal tunnel syndrome (secondary to a work related injury on
      January 3, 2007) from alleged onset date (January 3, 2007) to July of 2008
      per Exhibit 9F (20 CFR 404.1520(c)).  As of July of 2008, the claimant
      suffered a mild compression fracture of a vertebra with an additional
      diagnosis of lower back pain.

4.    The claimant does not have an impairment or combination of impairments
      that meets or medically equals one of the listed impairments in 20 CFR
      Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and
      404.1526).

5.    After careful consideration of the entire record, I find that the claimant has
      the residual functional capacity to perform light work as defined in 20
      CFR 404.1567(b) but he must have a sit/stand option.

6.    The claimant is unable to perform any past relevant work (20 CFR
      404.1565).

7.    The claimant was born on December 1, 1964 and was 42 years old, which
      is defined as a younger individual age 18-49, on the alleged disability
      onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to
      communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of
      disability because using the Medical-Vocational Rules as a framework
      supports a finding that the claimant is "not disabled," whether or not the
      claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404,
      Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 3, 2007 through the date of this decision (20 CFR 404.1520(g)).

(R. 28-35.)

Plaintiff filed a request for review of the decision of the ALJ that was denied and the ALJ's decision became the final decision of the Commissioner.  (R. 1-7, 21-22.)[2]

## II.     STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g), cert. denied, 134 S. Ct. 1274 (2014); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence.  Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995).  This court may not weigh evidence or substitute its conclusions for those of the fact-finder.  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  As the Third Circuit has stated, "so long as an agency's fact-finding is supported by substantial evidence,

---

[2]     According to plaintiff, he was found disabled and entitled to DIB on September 15, 2011 based on an application for benefits filed on January 13, 2010.  (Pl.'s Br. at 2.)

reviewing courts lack power to reverse . . . those findings." <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 423(d)(5).

The Social Security Administration employs a five-part procedure to determine whether an individual has met this burden. 20 C.F.R. § 404.1520. This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. <u>See id.</u> The claimant bears the burden of establishing steps one through four of the five-step evaluation process, while the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other jobs existing in large numbers in the national economy. <u>Poulos v. Comm'r of Soc. Sec.</u>, 474 F.3d 88, 92 (3d Cir. 2007).

### III.    BACKGROUND

At the administrative hearing on September 17, 2009, plaintiff was forty-four years old and had a high school education.  (R. 43.)  Plaintiff testified that he lived with his wife and four children.  Id.  Plaintiff worked as truck driver until he injured his back while working.  (R. 43-44.)  Plaintiff received worker's compensation benefits for two years.  (R. 43-44.)  Plaintiff explained that he subsequently injured his back while helping to move a piano.  (R. 45.)  According to plaintiff, he cannot return to his work as a truck driver due to back and neck pain.  (R. 45-46.)

With respect to his physical condition, plaintiff testified that in addition to back and neck pain, he experiences numbness, tingling, and sharp pain in his arms that "comes and goes."  (R. 46.)  Plaintiff was prescribed splints to wear at night, but plaintiff indicated that he did not wear them because he felt that the splints did not help.  (R. 46-47.)  According to plaintiff, he has problems with his hands and will drop things, occasionally having difficulty with opening jars or containers.  (R. 52.)  Plaintiff testified that he also is unable to bend over due to back pain.  (R. 53.)  He can sit for fifteen or twenty minutes before he needs to stand.  (R. 54.)

Plaintiff testified that his daily activities have been restricted as a result of his physical condition.  Plaintiff represented that he "[b]asically, sit[s] around the house" and "tr[ies] to get up and walk around."  (R. 47.)  When plaintiff's wife is at work, he does not perform any chores other than cleaning the dishes.  Id.  Plaintiff stated that he does not take out the trash; he can "barely lift a gallon" of liquid, but can take care of his personal needs.  Id.  Plaintiff can go to the market and pick up "[l]ight stuff" and can walk approximately two blocks before he needs to sit and rest.  (R. 48.)  Plaintiff attends his children's sports games, but cannot participate with them.  Id.  Plaintiff is able to drive, but limits driving to short distances.  (R. 52-53.)  Plaintiff

5

watches television during the day and does light cooking. (R. 55.) He attends church services every other week. Id.

In May 2007, plaintiff was evaluated and deemed capable of lifting forty pounds and had no limits on sitting, standing, or walking. Id. It was determined that plaintiff could not return to his work as a truck driver. Id. However, in August 2008, plaintiff hurt his back while lifting a piano. Id. Plaintiff also reported that his back was injured again when he was in a car accident in January 2009. (R. 50.) At the time of the hearing, plaintiff testified that he received injections and acupuncture treatment for his back pain. (R. 49.) Plaintiff also stated that he attended physical therapy twice each week. (R. 50.) Plaintiff testified that he is unable to work because he cannot stand or sit for a long period of time and he is unable to lift anything. (R. 56.) Plaintiff stated that he has no problem with concentration. Id.

The VE testified that plaintiff's past work as a truck driver who made deliveries to restaurants is classified as semi-skilled, medium to heavy work. (R. 57.) In response to the ALJ's question, the VE stated that if plaintiff could sit, stand, and walk less than two hours in an eight hour work day, plaintiff would be unable to do any work. Id. In addition, the VE opined that if plaintiff was able to lift ten pounds frequently, twenty pounds occasionally, and needed to alternate sitting and standing throughout the day, plaintiff would be unable to return to his past work. (R. 58.) The VE opined that such an individual, however, could work as a parking lot cashier, which is unskilled, light duty work. Id. The VE further indicated that such an individual could work as an office helper, which is unskilled, light duty work. Id. These positions could be performed by an individual who was further limited to lifting less than ten pounds. Id. Plaintiff's attorney added the additional restriction that the hypothetical individual is limited to "use of his bilateral hands" "up to one third of the work day" "for gross or fine manipulation."

(R. 59.) The VE opined that the hypothetical individual could not perform the identified job with this additional restriction, but that there are light duty jobs that require only occasional use of the hands, such as furniture rental clerk and information clerk. Id. According to the VE, the information clerk position and the furniture rental clerk could be performed with a sit/stand option. (R. 60.)

## IV. DISCUSSION

The ALJ found that the evidence of record supports a finding that plaintiff has the following severe impairments: cervical radiculopathy and bilateral carpal tunnel syndrome from the alleged onset date to July of 2008. (R. 28.) The ALJ further found that as of July 2008, plaintiff suffered a mild compression fracture of a vertebra with an additional diagnosis of lower back pain. Id. These impairments do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. Ultimately, the ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform light work with a sit/stand option. (R. 29.) Plaintiff contends that substantial evidence does not support the ALJ's decision. Specifically, plaintiff avers that the ALJ erred at step two of the sequential analysis, improperly rejected opinions from treating and examining sources, failed to assess plaintiff's work history in analyzing his credibility, and failed to determine whether there were any conflicts between the VE's testimony and the DOT. (Pl.'s Br. at 2-18; Reply at 1-8.) In contrast, defendant maintains that substantial evidence supports the decision of the ALJ. (Def.'s Br. at 4-21.)

### A. ALJ's Step Two Findings

Plaintiff first argues that the ALJ erred at step two of the sequential analysis because the ALJ's findings are not sufficient to permit adequate judicial review. (Pl.'s Br. at 2-4;

Reply at 2.)  In response, defendant contends that substantial evidence in the record supports the

ALJ's step two findings.  (Def.'s Br. at 4-7.)

At step two of the sequential analysis, the ALJ must determine whether the

claimant has a severe impairment or combination of impairments which significantly limits the

claimant's physical or mental ability to do basic work activities.  See 20 C.F.R. § 404.1520(c).

Regarding the proper analysis at step two, the Third Circuit has stated that the "burden placed on

an applicant at step two is not an exacting one."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357,

360 (3d Cir. 2004).  An applicant need only demonstrate something beyond "a slight abnormality

or a combination of slight abnormalities which would have no more than a minimal effect on an

individual's ability to work."  Id. (citing SSR 85-28, 1985 WL 56856, at *3).  Reasonable doubts

regarding the severity of the impairment are to be resolved in favor of the applicant.  Id. (citing

Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546-47 (3d Cir. 2003)).

In the present case, at step two of the sequential analysis, the ALJ found:

> The claimant has the following severe impairments: cervical radiculopathy and
> bilateral carpal tunnel syndrome (secondary to a work related injury on January 3,
> 2007) from alleged onset date (January 3, 2007) to July of 2008 per Exhibit 9F
> (20 CFR 404.1520(c)).  As of July of 2008, the claimant suffered a mild
> compression fracture of a vertebra with an additional diagnosis of lower back
> pain.

(R. 28.)  The ALJ also provided the following explanation for her finding:

> From the alleged onset date (January 3, 2007) to July 2008, the severe
> impairments are cervical radiculopathy and bilateral carpal tunnel syndrome
> (secondary to a work related injury on January 3, 2007 per Exhibit 9F, p. 3).
> These impairments are severe because they cause significant vocationally-related
> functional limitations.
>
> As of July 2008, the claimant suffered a mild compression fracture.  There is an
> additional diagnosis of lower back pain.

Id.

Plaintiff contends that the ALJ's finding at the severity step failed to determine whether plaintiff has cervical radiculopathy and bilateral carpal tunnel syndrome after July 2008. (Pl.'s Br. at 3.)  According to plaintiff, the ALJ's finding could be interpreted to mean that cervical radiculopathy and bilateral carpal tunnel syndrome are no longer severe impairments after July 2008.  Id. at 4.

Plaintiff's interpretation of the ALJ's step two finding, however, is not supported by the ALJ's decision.  The ALJ did not deny plaintiff benefits at step two.  Rather, the ALJ continued with the sequential analysis and ultimately determined that plaintiff has the RFC to perform light work with a sit/stand option.  (R. 29.)  At the remaining steps of the sequential evaluation process, the ALJ considered limitations caused by cervical radiculopathy and bilateral carpal tunnel syndrome.  See R. 28-35.  For example, at step three of the sequential analysis, the ALJ evaluated whether plaintiff's cervical and lumbar spine impairments met or medically equaled Listings 1.04A and B and evaluated whether plaintiff's wrist-hand impairment met or medically equaled Listing 1.02A.  (R. 28-29.)

Furthermore, when assessing plaintiff's RFC, the ALJ considered at great length the evidence pertaining to plaintiff's cervical and lumbar spine, and his wrists and hands.  See R. 29-34.  When discussing Dr. Rubenfeld's consultative examination report dated February 19, 2009, the ALJ mentioned Dr. Rubenfeld's findings regarding plaintiff's straight leg test and range of motion of his lumbar and cervical spine.  (R. 32.)  The ALJ also took note of Dr. Rubenfeld's finding that plaintiff has carpal tunnel syndrome and that plaintiff reports that he drops things.  Id.  The ALJ then considered such evidence when analyzing plaintiff's grip strength and ability to lift and carry.  Id.  The ALJ analyzed Dr. Rubenfeld's findings in detail as part of her RFC assessment.  In addition, the ALJ analyzed the findings of state agency physician

Candelaria Legaspi, M.D., dated February 27, 2009.  (R. 33.)  The ALJ discussed and analyzed

Dr. Legaspi's report which concluded that plaintiff had, inter alia, "primary diagnoses of cervical

disc disease, cervical radiculopathy, and carpal tunnel syndrome."  Id.  The ALJ ultimately

afforded "significant probative weight" to Dr. Legaspi's findings.  Id.

   While the ALJ's description of her finding at step two is, perhaps, unartfully

drafted, the ALJ's decision makes clear that she considered cervical radiculopathy and bilateral

carpal tunnel syndrome throughout the sequential analysis.  That is, the ALJ did not limit her

analysis of these conditions to the period prior to July 2008 as plaintiff suggests.  Accordingly,

the ALJ did not err at step two.

   An error at step two may be harmless if the ALJ considers the effects of the

impairment in assessing a claimant's RFC.  See e.g., Lee v. Astrue, 2007 WL 1101281, at *3 n. 5

(E.D. Pa. Apr. 12, 2007) (noting that the ALJ's determination at step two would not warrant

remand if the ALJ proceeded with the five step sequential evaluation process and properly

analyzed the claimant's limitations, considering both severe and non-severe limitations).

"[E]ven if an ALJ erroneously determines at step two that one impairment is not 'severe,' the

ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the

effects of that impairment at steps three through five."  McClease v. Comm'r of Soc. Sec., 2009

WL 3497775, at *10 (E.D. Pa. Oct. 28, 2009) (citing Nosse v. Astrue, 2009 WL 2986612, at *10

(W.D. Pa. Sept. 17, 2009)).  See also Salles v. Comm'r of Soc. Sec., 229 F.App'x 140, 145 n.2

(3d Cir. 2007) (not precedential) ("Because the ALJ found in Salles's favor at Step Two, even if

he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").[3]

Any error the ALJ may have committed at step two of the sequential analysis with her description of plaintiff's severe impairments, is harmless.  The ALJ clearly considered the effects of the impairments in assessing plaintiff's RFC.  Thus, plaintiff's argument that the ALJ's findings at the severity step are not sufficient to permit adequate judicial review is without merit.

**B.     Rejection of Treating and Other Source Opinions**

Plaintiff argues that the ALJ improperly rejected opinions from two treating providers and a consultative examiner.  (Pl.'s Br. at 4-13.)  Plaintiff also contends that the ALJ erred in attributing significant probative weight to the RFC assessment completed in 2007 by Lisa Bitton, OTR/L, CWCE, and to the state agency analysis performed by Candelaria Legapsi, M.D., on September 14, 2009.  Id. at 13-16.

**1.     Richard A. Kaplan, M.D.**

Richard A. Kaplan, M.D., managed plaintiff's acupuncture therapy between January 2008 and June 2008.  Plaintiff contends that the ALJ improperly assessed Dr. Kaplan's medical records and opinions.  First, plaintiff argues that the ALJ failed to consider objective medical evidence that supports Dr. Kaplan's opinions.  (Pl.'s Br. at 5-7.)  Specifically, plaintiff contends that the ALJ erred by failing to discuss Dr. Kaplan's findings that plaintiff had

---

[3]     In Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005), the Third Circuit rejected the plaintiff's argument that the ALJ erred when he failed to explicitly consider the plaintiff's alleged obesity throughout the disability determination.  The court concluded that remand was not required because it would not affect the outcome of the case.  The court stated, "[b]ecause her doctors must also be viewed as aware of Rutherford's obvious obesity, we find that the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition."  Id.

"limitations on range of motion, spasm, tenderness to palpatation and slightly decreased grip strength" and neck pain with radiating numbness.  Id. at 6 (citing R. 319).

  Contrary to plaintiff's assertion, however, the ALJ need not mention every notation within Dr. Kaplan's records.  "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."  Hur v. Barnhart, 94 F.App'x 130, 133 (3d Cir. 2004) (not precedential).  See also Mays v. Barnhart, 227 F.Supp. 2d 443, 449 (E.D. Pa. 2002) (finding that the ALJ is not required to explicitly discuss every report in the record if there is other evidence that supports the ALJ's conclusion).  Rather, the ALJ's decision demonstrates that the ALJ thoroughly reviewed Dr. Kaplan's record evidence.  See R. 302-50.  The ALJ stated in relevant part:

> When Dr. Kaplan physically examined the claimant on January 14, 2008, the claimant was able to sit, stand and walk without obvious physical limitation, although he remained disabled as a "truck driver" (emphasis added).  He did not display bizarre or unusual pain behavior.  The claimant had "mild" restrictions in cervical mobility.  He was able to bring his arms overhead but reported paresthesias in the hands.  He had good range of motion in the elbows, wrists, and fingers in isolation.  There were no problems with lumbar flexibility.  He had good range of motion of the knees and ankles.  Deep tendon reflexes were normally active and symmetrical.  Sensation was intact.  There were no focal motor deficits.  There was no evidence of fasciculation or atrophy.  Gait and station were normal.  Dr. Kaplan noted that the claimant remained symptomatic as a result of injuries sustained in the work place on January 3, 2007 and that the proper diagnosis was cervical radiculopathy and bilateral carpal tunnel syndrome.  Furthermore, **on March 5, 2008, Dr. Kaplan stated that "He sits, stands, and walks without physical limitation"** (emphasis added), although there was some limitation in range of motion of the cervical spine.  Muscle strength in the upper arms was good and grip strength was only slightly decreased on the right dominant hand.

(R. 31.)

  Thus, the ALJ acknowledged Dr. Kaplan's diagnosis of cervical radiculopathy and bilateral carpal tunnel syndrome.  The ALJ also acknowledged Dr. Kaplan's finding that there

was "some limitation in range of motion of the cervical spine" and that grip strength "was only slightly decreased on the right dominant hand." However, in discounting Dr. Kaplan's opinion that plaintiff was disabled, the ALJ found more persuasive Dr. Kaplan's findings that plaintiff had good range of motion in the elbows, wrists, and fingers; no problems with lumbar flexibility; good range of motion of the knees and ankles; deep tendon reflexes were normally active and symmetrical; sensation was intact; there were no focal motor deficits; there was no evidence of fasciculation or atrophy; and gait and station were normal.

Thus, plaintiff essentially seeks to have this court re-weigh the evidence and come to a different conclusion. However, a reviewing court may not set the Commissioner's decision aside if it is supported by substantial evidence, even the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). See also Burns, 312 F.3d at 118 ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). In fact, Dr. Kaplan's own findings support the ALJ's assessment of Dr. Kaplan's medical records. Dr. Kaplan's notes from a physical examination on March 5, 2008 indicate that while plaintiff had "some limitation on range of motion of the cervical spine" and "mild to moderate spasm in the bilateral paravertebral muscles with tenderness to palpation," Dr. Kaplan also indicated that plaintiff "sits, stands, and walks without physical limitation." See R. 319. The ALJ did not fail to consider objective medical evidence, as plaintiff argues. Rather, the ALJ properly considered the medical evidence and gave Dr. Kaplan's findings the weight she deemed appropriate.

Plaintiff also argues that the ALJ erred in rejecting Dr. Kaplan's letter opinions that plaintiff was unable to work. (Pl.'s Br. at 7-8.) The record contains two letters, dated

February 20, 2008 and April 2, 2008, signed by Dr. Kaplan, in which Dr. Kaplan opined that

plaintiff "remains disabled for employment at this time."  (R. 315, 328.)

       The regulations dictate that the ALJ must give medical opinions the weight she

deems appropriate based on factors such as whether the physician examined or treated the

claimant, whether the opinion is supported by medical signs and laboratory findings, and whether

the opinion is consistent with the record as a whole.  See 20 C.F.R. § 404.1527.  An ALJ shall

"accord treating physicians' reports great weight, especially when their opinions reflect expert

judgment based on a continuing observation of the patient's condition over a prolonged period of

time."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal citations omitted).  If the

opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the

ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong

reason.  Id. (citing Plummer v, Apfel, 186 F.3d 422, 429 (3d Cir. 1999).  Moreover, an ALJ shall

give a treating physician's opinion controlling weight when it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" and it is not "inconsistent with the other

substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2), (3).  A treating source's opinion

may be rejected "on the basis of contradictory medical evidence," Plummer, 186 F.3d at 429, or

if it is unsupported by sufficient clinical data, Newhouse v. Heckler, 743 F.2d 283, 286 (3d Cir.

1985).  An ALJ may not reject a treating physician's opinion based upon her own credibility

judgments, speculation or lay opinion.  Morales, 225 F.3d at 317.  According to the regulations,

"a statement by a medical source that you are disabled or unable to work does not mean that we

will determine that you are disabled."  20 C.F.R. § 404.1527(e)(1).

The ALJ analyzed Dr. Kaplan's medical opinions in accordance with the Commissioner's regulations.  The ALJ based her rejection of Dr. Kaplan's opinions on their inconsistency with Dr. Kaplan's own physical findings.  The ALJ stated:

> I, however, disagree with the April 2, 2008 statement from Dr. Kaplan, wherein he stated that "He remains disabled for any and all employment at this time" (Exhibit 9F, p.27).  Dr. Kaplan stated that the claimant's therapy was helpful but the claimant's mobility was very limited and he was fatigued; this is highly inconsistent with the January 2008 and March 2008 (less than 30 days earlier) physical findings, and I, pursuant to Social Security Ruling 96-2p, afford the limitations expressed on April 2, 2008 very little probative weight as opposed to the January and March 2008 limitations which I afford significant probative weight based upon being supported by the clinical findings.

(R. 31.)  The ALJ did not reject Dr. Kaplan's opinion that plaintiff was disabled for employment based upon her own credibility judgments, speculation or lay opinion.  Rather, she rejected Dr. Kaplan's conclusion based upon its inconsistency with Dr. Kaplan's own findings, including Dr. Kaplan's conclusion in March 2008 that plaintiff sits, stands and walks without limitation.  See id.  As the ALJ noted, Social Security Ruling 96-2p guides that: "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record."  See SSR 96-2p at 2.  The ALJ may properly reject Dr. Kaplan's opinions based on the contrary evidence in the record.  See 20 C.F.R. § 404.1527; Plummer, 186 F.3d at 429.  In addition, "[a]n ALJ may accept some of a medical source's opinions while rejecting other opinions from the same source."  Comiskey v. Astrue, 2010 WL 308979, at *9 (E.D. Pa. Jan. 27, 2010) (citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202-04 (3d Cir. 2008)).

The ALJ did not err in rejecting the conclusory opinions offered by Dr. Kaplan because, as the ALJ pointed out, such opinions are inconsistent with the physical findings

detailed in Dr. Kapalan's own treatment notes.  In addition, the ALJ gave a clear explanation for

rejecting Dr. Kaplan's opinions.  The ALJ considered all the evidence, noted the lack of support

for Dr. Kaplan's opinions, and explained her reasons for weighing the evidence in the manner

she did.  See R. 31.  This court may not re-weigh the evidence or substitute its determinations for

those of the ALJ.  See Burns, 312 F.3d at 118.  Thus, substantial evidence supports the ALJ's

assessment of Dr. Kaplan's medical evidence and opinions.

### 2.    Ira Rubenfeld, M.D.

Plaintiff also argues that the ALJ erred in rejecting the findings of Ira Rubenfeld,

M.D., a consultative examiner.  (Pl.'s Br. at 8-11.)  According to plaintiff, Dr. Rubenfeld's

assessment of plaintiff's physical limitations is supported by objective physical findings.

In reviewing the evidence of record to assess plaintiff's RFC, the ALJ noted that

in July 2008, plaintiff suffered a "mild" compression fracture of the vertebra while moving a

piano.  (R. 31.)  Plaintiff underwent an MRI of the lumbar spine on September 17, 2008 at the

Rothman Institute which showed "mild compression fracture L2."  (R. 352.)  It did not appear to

be pathologic but rather osteoporotic in nature.  Id.  No cord compression was noted.  Id.  Due to

the non-traumatic compression fracture noted, plaintiff was encouraged to see his family

physician.  Id.

The ALJ also noted that on January 29, 2009, plaintiff was a passenger in a car

that was involved in a motor vehicle accident.  Id.  Plaintiff complained of pain that was

aggravated by prolonged standing and walking, and began receiving injections and physical

therapy for this in May 2009.  Id.  Plaintiff was diagnosed with cervical, thoracic, and lumbar

strain and sprain.  Id.

When he examined plaintiff on February 19, 2009, Dr. Rubenfeld indicated that plaintiff's chief complaints were a fractured spine, herniated discs, and bilateral carpal tunnel syndrome.  (R. 367.)  Dr. Rubenfeld concluded that plaintiff could lift two to three pounds, could stand/walk for one hour or less, sit for ten to fifteen minutes, has limits in reaching, handling and fingering, and can never engage in postural activities, including bending, kneeling, stooping, crouching and balancing due to decreased range of motion of the lumbar spine.  (R. 365-66.)

The ALJ reviewed Dr. Rubenfeld's examination report in great detail.  (R. 32-33.) With respect to Dr. Rubenfeld's physical examination of plaintiff, the ALJ noted that plaintiff's grip strength was estimated as one hundred percent bilaterally.  (R. 32.)  Plaintiff's upright straight leg raising maneuver on the left was positive, but negative on the right and in the supine position it was positive on the left and negative on the right.  Id.  His gait was normal.  Id.  In addition, plaintiff "lean[ed] against the exam table and the range of motion was abnormal for the cervical spine at 30/40 for lateral flexion bilaterally and 25/45 for rotation bilaterally.  The lumbar spine was abnormal at 30/90 for flexion/extension."  Id.  Dr. Rubenfeld also noted that plaintiff had normal fine and dextrous movements, intact cranial nerves, full motor strength bilaterally, intact sensation, and equal reflexes bilaterally.  (R. 368-69.)

The ALJ offered an in depth explanation for not fully crediting Dr. Rubenfeld's limitations.  The ALJ stated:

> Dr. Rubenfeld completed a medical source statement to do physical work with the claimant being occasionally limited to lifting and carrying up to 2 to 3 pounds per the claimant, who stated that he had pain in his neck and back as well as carpal tunnel syndrome.  I, however, would point to the claimant's grip strength being 100% at the physical exam and would afford limited probative weight to the severity of the claimant's subjective complaints, pursuant to Social Security Ruling 96-7p.  Dr. Rubenfeld limited standing and walking to 1 hour or less per the claimant's subjective complaints of pain in the neck and spine as well as the findings on the physical exam of decreased range of motion of the cervical spine

and lumbar spine.  I, however, would again point out that the severity of the claimant's subjective complaints are not fully consistent with the physical examination findings because although the claimant's upright straight leg raising maneuver was positive on the left, it was negative on the right and in the supine position it was positive on the left and negative on the right as well as the claimant having a normal gait.  As to sitting, Dr. Rubenfeld listed 10 to 15 minutes again per the claimant's subjective complaints of pain and the decreased range of motion (as discussed previously) of the lumbar spine but the physical examination itself by Dr. Rubenfeld was more than 10 to 15 minutes and the claimant had to sit at the hearing more than 10 to 15 minutes.  Thus, pursuant to Social Security Rulings 96-7p and 96-8p, I afford no probative weight to the severity of the sitting limitations.  Dr. Rubenfeld found that the claimant could occasionally perform climbing but never bending, kneeling stooping, crouching or balancing due to decreased range of motion of the lumbar spine.  Limitations were also imposed on reaching, handling and fingering, however, I point to Dr. Rubenfeld's clinical consultative examination findings that indicate fine dexterous movements were normal with grip strength estimated as 100 percent (See, Exhibits 11F and 12F).

(R. 32-33.)

Thus, the ALJ did not credit Dr. Rubenfeld's opinion because the ALJ determined that Dr. Rubenfeld's extreme limitations were contradicted by his clinical findings.  A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC.  Salles, 229 F.App'x at 148 (citing SSR 96-8p, 1996 WL 374184, at *1).  Indeed, it appears that Dr. Rubenfeld relied upon plaintiff's subjective complaints, rather than medical findings, as the basis for his proposed limitations.  See R. 365-66.  Dr. Rubenfeld referenced plaintiff's complaints rather than objective findings in setting his limitations.  Id.  "[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion."  Morris v. Barnhart, 78 F.App'x 820, 824-25 (3d Cir. 2003) (not precedential) (citing Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996)).  "An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own

accounts of her symptoms and limitations when the claimant's complaints are properly discounted."  Id. at 825 (citing Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)).[4]

Again, plaintiff seeks to have the court re-weigh the evidence which it may not do. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").  See also Burns, 312 F.3d at 118 (same).  Substantial evidence supports the ALJ's treatment of Dr. Rubenfeld's assessment.

### 3. Kunjan Shah, P.A.C.

Plaintiff also argues that the ALJ failed to give proper consideration to the assessment of Kunjan Shah, P.A.C., of South Philly Pain Management, who completed a physical RFC assessment on September 4, 2009.  (Pl.'s Br. at 11-13.)  Mr. Shah's assessment stated that plaintiff can lift less than ten pounds occasionally, and sit, stand/walk for less than two hours.  (R. 446-49.)  Mr. Shah also indicated, inter alia, that plaintiff would need to take a fifteen minute break every forty-five minutes.  (R. 448.)

Plaintiff contends that the ALJ failed to give proper attention to Mr. Shah's opinion, in accordance with Social Security Ruling 06-03p.  Pursuant to SSR 06-03p, Mr. Shah, a physician's assistant, is not a "treating source" because he is not an "acceptable medical source." See SSR 06-03p.  Rather, Mr. Shah is an "other source," or a medical source who is not an "acceptable medical source."  Id.  Information from an "other source" such as Mr. Shah "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to

---

[4]      Plaintiff also claims that the ALJ's RFC should have contained limitations regarding plaintiff's use of his hands and wrists, because Dr. Rubenfeld imposed such limitations.  (Reply at 2.)  Although she did not take these limitations into account, the ALJ was not required to do so.  Instead, the ALJ credited contradictory evidence in Dr. Rubenfeld's own physical findings, that plaintiff had grip strength of one hundred percent bilaterally.  See R. 32, 368.

function."  Id. at *2.  The weight to which opinion evidence from a medical source who is not an

"acceptable medical source" may be entitled "will vary according to the particular facts of the

case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion

is about, and many other factors."  Id. at *4.  SSR 06-03p lists the following factors: how long

the source has known and how frequently the source has seen the individual; how consistent the

opinion is with other evidence; the degree to which the source presents relevant evidence to

support an opinion; how well the source explains the opinion; whether the source has a specialty

or area of expertise related to the individual's impairment(s); and any other factors that tend to

support or refute the opinion.  Id. at *4-5.

Plaintiff mistakenly argues that the ALJ erred by failing to explicitly address the

factors set forth in SSR 06-03p.  However, SSR 06-03p also provides:

> Not every factor for weighing opinion evidence will apply in every case. The
> evaluation of an opinion from a medical source who is not an "acceptable medical
> source" depends on the particular facts in each case. Each case must be
> adjudicated on its own merits based on a consideration of the probative value of
> the opinions and a weighing of all the evidence in that particular case.

Id. at *5.  Furthermore, "the adjudicator generally should explain the weight given to opinions

from these 'other sources,' or otherwise ensure that the discussion of the evidence in the

determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's

reasoning, when such opinions may have an effect on the outcome of the case."  Id. at *6.

A review of the ALJ's decision reveals that the ALJ thoroughly reviewed Mr.

Shah's opinion.  See R. 33-34.  Mr. Shah's September 2009 assessment indicated that he had

seen plaintiff three times each week since May 2009, when plaintiff sought treatment for a

January 2009 car accident.  (R. 33, 436, 446.)  Plaintiff was diagnosed with cervical, lumbar, and

thoracic strain and sprain with an unknown prognosis.  (R. 33.)  The ALJ took note of the fact

that plaintiff told Mr. Shah that he had constant pain in his lower back since January 27, 2009, which was less than twelve months, and that bending, walking, and sitting were painful.  Id.  The ALJ also indicated that Mr. Shah "found objective clinical findings of positive pain to palpation at the lumbar spine; positive sitting root test; and positive straight leg raising test."  Id.  Mr. Shah "indicated that it was 'unknown' whether [plaintiff's] impairments would last at least 12 months."  Id.  After summarizing in detail the functional limitations that Mr. Shah imposed, the ALJ stated:

> To recapitulate, I have not further reduced the residual functional capacity because the diagnoses (lumbar, thoracic, and cervical strain and sprain) are not severe enough to support the extremely curtailed medical source statement, and the PAC is not able to state that the impairments will last 12 months.  Presumably they will not, given the benign nature of the diagnoses.

(R. 33-34.)

The treatment records of South Philly Pain Management show that plaintiff occasionally exhibited muscle spasms, limited range of motion secondary to pain, and tenderness in his lumbar facets.  See R. 398-444.  These findings support Mr. Shah's diagnoses of lumbar, thoracic, and cervical strain and sprain.  The ALJ's analysis of Mr. Shah's opinion is in accordance with the guidance of SSR 06-03p in that the ALJ discussed how long Mr. Shah had known plaintiff and how frequently Mr. Shah had seen plaintiff, summarized Mr. Shah's clinical findings which purported to support his functional assessment, and noted Mr. Shah was unable to opine that the impairments would last longer than twelve months.  See R. 33-34.  Thus, the ALJ's analysis of Mr. Shah's opinion was conducted in accordance with SSR 06-03p. Substantial evidence supports the ALJ's decision.

4.      **Weight attributed to the Functional Assessments by Lisa Bitton,
OTR/L, CWCE and Candelaria Legapsi, M.D.**

The ALJ ultimately concluded that plaintiff has the RFC to perform light work

with a sit/stand option.  In reaching this conclusion, the ALJ thoroughly reviewed the

medical evidence of record.  In addition to the medical evidence discussed <u>supra</u>, the ALJ's

approximately six page RFC determination includes an analysis of plaintiff's activities of daily

living, <u>see</u> R. 30 para. 2,[5] an assessment of plaintiff's credibility, <u>see</u> R. 30 para. 3,[6] and notations

---

[5]      With respect to plaintiff's activities of daily living, the ALJ stated:

> At the hearing, the claimant alleged severe back pain.  He settled with Worker's
> Compensation for carpal tunnel and back pain.  He stated that he drops things.  He
> drives short distances.  He stated that he does no chores, except for washing the
> dishes.  Allegedly, he can barely lift a gallon of milk.  He can attend to his
> personal needs and goes to the market to pick up non-heavy items.  He can walk
> about a block.  He watches the children play sports.  He goes to physical therapy
> twice a week.  He sees a pain management doctor.  The claimant alleged an
> inability to work because he cannot stand for prolonged periods.

(R. 30.)

[6]      The ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically
> determinable impairments could reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements pursuant to Social Security Ruling
> 96-7p concerning the intensity, persistence and limiting effects of these symptoms
> are not credible to the extent they are inconsistent with the above residual
> functional capacity assessment.  Specifically, the claimant can perform his
> personal care.  He drives, shops, and walks up to 2 blocks at the time of the State
> agency assessment.  He has received various forms of treatment for the alleged
> symptoms.  The record reveals that the treatment has generally been successful in
> controlling those symptoms.  He does not require an assistive device to ambulate.
> He does not use a TENS (transcutaneous electrical nerve stimulator) unit.  He has
> not been prescribed narcotic medication for pain.  He takes Motrin for pain.  In
> September 2008 (Exhibit 10F, p.3), it was noted that the claimant drinks a six
> pack daily.  Also, when he re-fractured his back, he was trying to lift a piano,
> which is hardly the conduct of a disabled man.

(R. 30.)

regarding plaintiff's past work history, see R. 30 para. 4.  The ALJ also reviewed x-ray and MRI

studies performed on plaintiff's shoulder in January and February 2007, see R. 30 para. 5, and an

MRI of the cervical spine performed in August 2007, see R. 30 para. 6.  The ALJ further detailed

plaintiff's medical history and the state agency opinions.  (R. 31-34.)

    The ALJ's decision reveals that the ALJ afforded significant probative weight to

the May 2007 functional capacity evaluation completed by Lisa Bitton, OTR/L, CWCE and the

February 27, 2009 opinion of state agency physician Candelaria Legaspi, M.D.  Plaintiff argues

that the ALJ erred in so doing.  See Pl.'s Br. at 13-16.

    With respect to Ms. Bitton's functional capacity evaluation, plaintiff argues that

the ALJ failed to analyze Ms. Bitton's assessment in accordance with SSR 06-03p.  Id.  Ms.

Bitton's functional capacity evaluation constitutes information from an "other source" under SSR

06-03p and the ALJ acted in accordance with SSR 06-03p in attributing significant weight to Ms.

Bitton's assessment.  That is, the ALJ considered whether the evaluation was consistent with

other evidence of record and the evidence supporting the opinion.  The ALJ stated:

> [The functional capacity evaluation] indicated light to medium work for lifting
> and pushing.  Sitting and standing were within functional limits but noted poor
> endurance for driving a truck due to limited prolonged shoulder reach with the left
> upper extremity.  **It was noted that the claimant should perform lifting
> activities at floor to waist level only and he can do this on an occasional basis
> up to 40 pounds.**  Alternate duty to truck driving was suggested (Exhibit 4F)
> (emphasis added).  Pursuant to Social Security Ruling 96-8p, this assessment is
> well-supported by physical therapy findings, clinical findings, activities of daily
> living, and the overall record; thus, I afford it significant probative weight.

(R. 31.)  Thus, substantial evidence supports the ALJ's reliance upon Ms. Bitton's functional

capacity evaluation.[7]

---

[7]   Plaintiff also argues that Ms. Bitton's assessment is outdated because it is based upon a
one-time examination in May 2007.  The court is not persuaded by plaintiff's argument that the
May 2007 report is outdated.  See Chandler, 667 F.3d at 361 ("The Social Security regulations

Furthermore, the ALJ did not err in attributing significant probative weight to the February 27, 2009, opinion of state agency physician Dr. Legaspi.  Although Dr. Legaspi did not examine plaintiff, the ALJ was entitled to rely upon Dr. Legaspi's opinion in fashioning the RFC.  The Third Circuit has recently stated:

> The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations.  See 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c).  Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir. 2011).  State agent opinions merit significant consideration as well.  See SSR 96-6p ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .").

Chandler, 667 F.3d at 361.

The court is not persuaded by plaintiff's argument that the ALJ improperly credited the opinion of the state agency physician, Dr. Legapsi.  "[A]n ALJ can choose to accept the findings of evaluating, non-examining state agency physicians over the opinions of treating physicians where the treating physicians' opinions were 'conclusory and unsupported by the medical evidence' and contradictory to other medical evidence of record." Myers v. Barnhart, 57 F.App'x 990, 996 (3d Cir. 2003) (not precedential) (citing Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991)).  In addition, Dr. Legapsi's February 27, 2009 opinion is based on a review of the record to that date.  The only medical records that post-date Dr. Legapsi's report are those of

---

impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.  Only where "additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required.  SSR 96-6p (July 2, 1996) (emphasis added)."

South Philly Pain Management, where plaintiff received treatment for lumbar, thoracic, and

cervical strain and sprain.  Thus, substantial evidence in the record supports the ALJ's decision

to credit the opinions of Ms. Bitton and Dr. Legapsi over the opinions of Drs. Kaplan and

Rubenfeld and Mr. Shah.  See Id. (finding that the ALJ did not err in crediting the opinions of

two state agency doctors over that of the treating physician because the treating physician's

opinion provided only limited support for the plaintiff's claims).  Accordingly, substantial

evidence supports the ALJ's RFC analysis.

### C.    Credibility Analysis

Plaintiff argues also that the ALJ erred in assessing plaintiff's credibility.  (Pl.'s

Br. at 16-17.)  The ALJ found that the medically determinable impairments reasonably could be

expected to cause the alleged symptoms; however, plaintiff's statements concerning the intensity,

persistence and limiting effects of the symptoms were not credible to the extent they were

inconsistent with the RFC assessed by the ALJ.  (R. 30.)

It is within the province of the ALJ to evaluate the credibility of a claimant.  Van

Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  "Although 'any statements of the

individual concerning his or her symptoms must be carefully considered,' SSR 96-7p (July 2,

1996), the ALJ is not required to credit them."  Chandler, 667 F.3d at 363 (citing C.F.R. §

404.1529(a)).  An ALJ's "findings on the credibility of claimants 'are to be accorded great

weight and deference, particularly since an ALJ is charged with the duty of observing a witness's

demeanor and credibility.'"  Irelan v. Barnhart, 243 F.Supp. 2d 268, 284 (E.D. Pa. 2003) (citing

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997)), aff'd, 82 F.App'x 66 (3d

Cir. 2003).  An ALJ may disregard subjective complaints when contrary evidence exists in the

record.  Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993).  The ALJ must, however,

provide his or her reasons for doing so.  Burnett, 220 F.3d at 122; Matullo v. Bowen, 926 F.2d

240, 245 (3d Cir. 1990) (noting that ALJ may reject claim of disabling pain where he has

considered subjective complaints and specified reasons for rejecting claim).

        Specifically, plaintiff argues that the ALJ erred in failing to consider plaintiff's

long work history in evaluating credibility and points to evidence to support his history.  (Pl.'s

Br. at 16-17.)  In assessing plaintiff's credibility, it is clear that the ALJ considered all of the

relevant evidence in the record, including the medical evidence, plaintiff's activities of daily

living, plaintiff's medications, plaintiff's own statements about his symptoms, and reports by his

medical providers about his symptoms and how they affected him.  See 20 C.F.R. §

404.1529(c)(1)-(3); SSR 96-7p.  The ALJ supported her credibility findings with ample evidence

in the record.  Plaintiff's ability to tend to his personal care, drive, shop, walk up to two blocks,

and watch his children play sports, discredited his assertions of disabling pain.  See R. 30.  The

ALJ also found compelling record evidence demonstrating that treatment has generally been

successful in controlling plaintiff's symptoms.  This includes evidence that plaintiff does not

require an assistive device to ambulate, does not use a TENS unit, and has not been prescribed

narcotic medication for pain.  Id.  The ALJ further noted, "when he re-fractured his back [in July

2008], he was trying to lift a piano, which is hardly the conduct of a disabled man."  Id.

        The court is unpersuaded by plaintiff's argument that the ALJ erred in assessing

plaintiff's credibility because she failed to consider plaintiff's long work history.  An ALJ is not

required to give credibility to a claimant with a long work history "in spite of contradictory

statements made by the claimant that call that credibility into question."  Stroman v. Barnhart,

2004 WL 1813106, at *5 (E.D. Pa. July 27, 2004) (citing Dobrowolsky v. Califano, 605 F.2d 403

(3d Cir. 1979)).  Work history "is only one of many factors an ALJ may consider in assessing a

claimant's subjective complaints."  Thompson v. Astrue, 2010 WL 3661530, at *4 (W.D. Pa. Sept. 20, 2010) (citing 20 C.F.R. § 404.1529(c)(3)).  "Indeed, a claimant's work history alone is not dispositive of the question of his credibility, and an ALJ is not required to equate a long work history with enhanced credibility."  Id.

        If the ALJ erred in failing to discuss plaintiff's work history, any such error was harmless in light of the fact that the ALJ detailed other evidence in the record that called into question plaintiff's credibility.  See Corley v. Barnhart, 102 F.App'x 752, 755 (3d Cir. 2004) (not precedential) (finding that failure to afford heightened credibility to claimant's testimony due to long and productive work history was not error where claimant did not otherwise establish disability); Miller v. Astrue, 2012 WL 2500326, at *3 n.4 (E.D. Pa. June 29, 2012) ("The ALJ's omission of any consideration of Miller's work history, however, may not alone constitute reversible error.").  The ALJ explained the basis for her credibility determination in accordance with the Commissioner's regulations.  See R. 30-34; C.F.R. § 404.1529(c)(1)-(3).  Consequently, this court finds there was substantial evidence to support the ALJ's credibility determination.

        **D.    Conflict with the DOT**

        Plaintiff argues that the ALJ erred in relying upon the testimony of the VE, because the VE did not specify Dictionary of Occupational Titles ("DOT") codes for the jobs that she identified based on the hypothetical posed by the ALJ.  (Pl.'s Br. at 18.)  Plaintiff has alleged no harm due to this oversight and the court finds no error.  See Nahory v. Colvin, 2013 WL 3943512, at *3-4 (W.D. Pa. July 30, 2013) (finding that "the vocational expert's testimony, even in the absence of specific DOT numbers, constitutes substantial evidence supporting the ALJ's step 5 finding that jobs exist in significant numbers in the national economy that plaintiff can perform").  See also Irelan v. Barnhart, 82 F.App'x 66, 72 (3d Cir. 2003) (not precedential)

("[T]here is no legal basis for [the claimant's] argument that 'if the claimant is to adequately test the accuracy of the VE testimony, the DOT numbers must be available.' The DOT is not binding on the Commissioner. It is published by the Department of Labor as a tool.").

Plaintiff further argues that the ALJ erred in that she did not ask the VE if the jobs she identified in response to the ALJ's hypothetical were consistent with the DOT, as required by SSR 00-4p. (Pl.'s Br. at 17-18.) SSR 00-4p provides:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p at *2. The regulations also provide that the ALJ has a duty to ask about conflicts between the VE testimony and the DOT and to resolve any conflicts before relying on the VE testimony. Id. at *4.

In analyzing whether the ALJ followed SSR 00-4p, the court must consider: "(1) whether the VE testified about the requirements of a job or occupation that the claimant could perform; (2) whether the ALJ asked the VE if his or her testimony was consistent with the DOT; if the ALJ did not, whether there was an actual conflict between the VE's testimony and the DOT. Obviously, if there was no conflict, the failure to ask the VE about consistency with the DOT would be harmless error." Rivera-Negron v. Astrue, 2013 WL 5823713, at *4 (E.D. Pa. Oct. 30, 2013).

The ALJ included a sit/stand option in the hypothetical presented to the VE for consideration. See R. 58, 60. As plaintiff notes, the DOT does not include sit/stand options in

job descriptions.  See Jones v. Colvin, 2013 WL 5468305, at *16 (E.D. Pa. Oct. 1, 2013).  The

ALJ did not ask the VE whether her testimony was consistent with the DOT and the VE did not

refer to the DOT in her testimony at the administrative hearing.  See R. 57-61.  In her written

decision, the ALJ found that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is

consistent with the information contained in the Dictionary of Occupational Titles."  (R. 35.)

       The Commissioner argues, however, there is no conflict between the VE's

testimony and the DOT because the DOT does not address sit/stand options.  See Conn v. Astrue,

852 F.Supp. 2d 517, 523 (D. Del. 2012) (finding no conflict between VE testimony and the DOT

because the DOT does not address sit/stand options).  See also Jones, 2013 WL 5468305, at *16

("Because the DOT does not cover the sit-stand option, the DOT and the testimony of the VE are

not necessarily inconsistent in this regard.  Thus, the duty on the part of the ALJ to inquire into

conflicts does not arise."); Horn v. Colvin, 2013 WL 1386836, at *4 (W.D. Pa. Apr. 4, 2013)

(VE's failure to note that DOT's job descriptions did not include the sit/stand option contained in

the ALJ's hypothetical question did not warrant remand).  This court agrees.  If there is no

conflict, then the failure to ask the VE about the DOT is harmless error.  Indeed, plaintiff again

has not articulated, much less established, any harm from the alleged inconsistency.  Plaintiff

bears the burden of showing that the error was harmful.  Simpson v. Astrue, 2011 WL 1883124,

at *5 ( E.D. Pa. May 17, 2011) (citing Shinseki v. Sanders, 129 S.Ct. 1696, 1705-06 (2009)).

       Even if there is a conflict between the VE's testimony and the DOT, an

unexplained inconsistency is not per se fatal to the ALJ's determination so long as there is

substantial evidence in the record to support the ALJ's finding.  Williams v. Barnhart, 424

F.Supp. 2d 796, 800-01 (E.D. Pa. 2006) (citing Rutherford, 339 F.3d at 557).  In response to the

ALJ's questioning, the VE opined that if plaintiff was able to lift ten pounds frequently, twenty

pounds occasionally, and needed to alternate sitting and standing throughout the day, plaintiff

could work as a parking lot cashier, which is unskilled, light duty work, of which there are

121,000 jobs nationally and 1,400 locally.  (R. 58.)  The VE further indicated that such an

individual could work as an office helper, which is unskilled, light duty work, of which there are

643,000 jobs nationally and 1,500 locally.  Id.  The VE also testified that plaintiff could perform

light exertional jobs such as a rental clerk, of which there are 210,000 jobs nationally and 10,000

locally and information clerk, of which there are 205,000 jobs nationally and 1,000 locally.  (R.

59.)  According to the VE, the information clerk position could be performed with a sit/stand

option and the furniture rental clerk may be performed with a sit/stand option.  (R. 60.)  Thus, the

ALJ obtained detailed responses from the VE in response to her hypothetical.  The ALJ found

such testimony to be consistent with the DOT.  The VE's testimony constitutes substantial

evidence in the record to support the ALJ's analysis.  See Diehl v. Barnhart, 357 F.Supp. 2d 804,

823 (E.D. Pa. 2005) ("[W]hile the ALJ did not ask the VE specifically whether there were any

conflicts between his testimony and the DOT descriptions of each job, such an inquiry was

unnecessary in light of the detailed questioning of the VE by both the ALJ and Plaintiff's

attorney.").

V.    CONCLUSION

        After a careful and thorough review of all of the evidence in the record, and for

the reasons set forth above, this court finds that the ALJ's findings are supported by substantial

evidence.  Accordingly, the court makes the following:

## R E C O M M E N D A T I O N

        AND NOW, this 16th day of April, 2014, upon consideration of plaintiff's Brief

and Statement of Issues in Support of Request for Review, defendant's Response to Request for

30

Review by Plaintiff, and plaintiff's Reply, it is respectfully recommended that plaintiff's Request

for Review be **DENIED**.

        The parties may file objections to the Report and Recommendation.  <u>See</u> Loc. R.

Civ. P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

        BY THE COURT:


        _/s/ Thomas J. Rueter_____
        THOMAS J. RUETER
        United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SANBORN                    :                    CIVIL ACTION
                                   :
        v.                         :
                                   :
CAROLYN W. COLVIN,                 :
Acting Commissioner of Social Security :
Administration                     :                    NO.  13-224

## ORDER

AND NOW, this     day of            , 2014, upon consideration of plaintiff's Brief

and Statement of Issues in Support of Request for Review, defendant's Response to Request for

Review of Plaintiff, and plaintiff's reply thereto, and after review of the Report and

Recommendation of United States Magistrate Judge Thomas J. Rueter, it is hereby

**O R D E R E D**

1.      The Report and Recommendation is **APPROVED** and **ADOPTED**.

2.      Plaintiff's Request for Review is **DENIED**.

3.      The Clerk of Court is hereby directed to mark this case closed.

BY THE COURT:

_____
JUAN R. SANCHEZ,          J.